UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEWARD HEALTH CARE SYSTEM, LLC,      :
BLACKSTONE MEDICAL CENTER, INC.,      :
f/k/a STEWARD MEDICAL HOLDING          :
SUBSIDIARY FOUR, INC., BLACKSTONE      :
REHABILITATION HOSPITAL, INC., f/k/a   :      C.A. No.  13-405-S
STEWARD MEDICAL HOLDING SUBSIDIARY :
FOUR REHAB, INC.                       :
                                       :
        v.                             :
                                       :
BLUE CROSS & BLUE SHIELD OF            :
RHODE ISLAND                           :

## BLUE CROSS & BLUE SHIELD OF RHODE ISLAND'S
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)
## FOR FAILURE TO STATE A CLAIM

Defendant, Blue Cross & Blue Shield of Rhode Island, hereby moves to dismiss for

failure to state a claim with respect to the Complaint filed by Steward Health Care System, LLC,

Blackstone Medical Center, Inc. f/k/a Steward Medical Holding Subsidiary Four, Inc., and

Blackstone Rehabilitation Hospital, Inc., f/k/a Steward Medical Holding Subsidiary Four Rehab,

Inc. on the grounds that (1) Plaintiffs' allegations do not state a claim under the antitrust laws;

(2) Plaintiffs lack antitrust standing; (3) Plaintiffs have failed to allege plausible relevant

markets; (4) Defendant's conduct is immune from antitrust liability under the *Noerr-Pennington*

doctrine; and (5) Plaintiffs have failed to plausibly allege requisite elements of their tortious

interference claims.  The grounds for Defendant's motion are set forth more fully in the

accompanying memorandum of law.

## DEFENDANT REQUESTS ORAL ARGUMENT AND ESTIMATES
## THAT ONE HOUR WOULD BE APPROPRIATE.

DEFENDANT, BLUE CROSS & BLUE SHIELD
OF RHODE ISLAND
By its attorneys,

/s/  Patricia K. Rocha
John A. Tarantino (#2586)
Patricia K. Rocha (#2793)
Joseph Avanzato (#4774)
Michael J. Tarantino (#8804)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI  02903
Tel:  (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
javanzato@apslaw.com
mtarantino@apslaw.com
Dated:  July 15, 2013

## Certificate of Service

I hereby certify that on July 15, 2013, I served a true copy of the within pleading *via electronic means (ECF)* on:

Robert C. Corrente, Esq.
Thomas Reith, Esq.
Burns & Levinson LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903
rcorrente@burnslev.com
treith@burnslev.com

Brendan V. Sullivan, Jr., Esq.
Steven R. Kuney, Esq.
Kevin Hardy, Esq.
Williams & Connolly LLP
725 12th Street, N.W.
Washington, DC 20005
bsullivan@wc.com
skuney@wc.com
khardy@wc.com

/s/  Patricia K. Rocha

651699.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEWARD HEALTH CARE SYSTEM, LLC,          :
BLACKSTONE MEDICAL CENTER, INC.,          :
f/k/a STEWARD MEDICAL HOLDING             :
SUBSIDIARY FOUR, INC., BLACKSTONE         :
REHABILITATION HOSPITAL, INC., f/k/a      :
STEWARD MEDICAL HOLDING SUBSIDIARY        :
FOUR REHAB, INC.                          :          C.A. No.  13-405-S
                                          :
       v.                                 :
                                          :
BLUE CROSS & BLUE SHIELD OF               :
RHODE ISLAND                              :

**BLUE CROSS & BLUE SHIELD OF RHODE ISLAND'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**
**FOR FAILURE TO STATE A CLAIM**

Defendant, Blue Cross & Blue Shield of Rhode Island ("BCBSRI"), submits its

memorandum of law in support of its Motion to Dismiss the Complaint filed by Steward Health

Care System, LLC, Blackstone Medical Center, Inc. f/k/a Steward Medical Holding Subsidiary

Four, Inc., and Blackstone Rehabilitation Hospital, Inc., f/k/a Steward Medical Holding

Subsidiary Four Rehab, Inc. (collectively "Steward").

**INTRODUCTION**

Steward seeks to hold BCBSRI liable under the antitrust laws for refusing to pay the

higher reimbursement rates that Steward wanted to receive for hospital services performed at

Landmark Medical Center ("Landmark").  Unsuccessful in its negotiations with BCBSRI,

Steward now turns to the Court for relief it could not obtain at the bargaining table.  But those

higher rates that Steward wanted inevitably would have resulted in higher insurance premiums

for BCBSRI's customers.  And BCBSRI's refusal to pay more to Steward in an effort to rein in

ever-escalating healthcare costs does not violate the federal antitrust laws or Rhode Island law. Indeed, the very purpose of those antitrust laws is to "protect[] consumers against prices that were too *high*, not too low." *Kartell v. Blue Shield of Mass., Inc.*, 749 F.2d 922, 931 (1st Cir. 1984) (emphasis in original), *cert. denied,* 471 U.S. 1029 (1985).

The factual core of Steward's Complaint is simple:  Steward refused to accept BCBSRI's proposed reimbursement rates for services performed at Landmark, demanding more.  Compl. ¶¶ 27-28, 37-38.  When Steward and BCBSRI could not come to terms on reimbursement rates at Landmark, Steward abandoned its plans to acquire the hospital.  *Id.* at ¶ 43.  Although there are no allegations that Steward currently operates *any* other hospitals in Rhode Island, Steward implausibly alleges that BCBSRI's conduct somehow prevented Steward not only from acquiring Landmark, but also from creating a "Rhode Island-based network of providers."  *Id.* at ¶ 58.  Steward alleges that such a hospital network would give Steward the market power or "negotiating leverage" to seek higher reimbursement rates.  *Id.*  But the antitrust laws provide no remedy to plaintiffs who are merely deprived "of the benefits of increased [market] concentration."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977). Similarly, although there are no allegations that Steward currently offers health insurance, Steward implausibly alleges that BCBSRI's conduct also prevented Steward from partnering with other health insurers to offer "low cost" health insurance in Rhode Island.  Compl.  ¶ 59.

Counts I through VIII of the Complaint claim that BCBSRI's conduct violates Section 2 of the Sherman Act and Section 6-36-5 of the Rhode Island Antitrust Act.  Counts IX and X claim that BCBSRI tortiously interfered with Steward's Asset Purchase Agreement ("APA") with Landmark, and with Steward's prospective business relations with the Thundermist Health Center ("Thundermist"), respectively.

As set forth more fully below, the Complaint's antitrust claims should be dismissed for the simple reason that even a monopolist has the right to determine its terms of dealing with other companies under the antitrust laws. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004). Second, Steward lacks standing because its alleged injury – loss of "negotiating leverage" with BCBSRI – is not cognizable under the antitrust laws. Steward also lacks standing because its alleged injury is remote and speculative. Third, Steward has failed to allege plausible relevant markets, an essential element of its antitrust claims. Fourth, much of BCBSRI's alleged conduct is immune from antitrust liability under the *Noerr-Pennington* doctrine. Finally, Steward has not only failed to allege required elements of its tortious interference claims, it has affirmatively pled facts that justify BCBSRI's alleged conduct as a matter of law. Each of these arguments is discussed below.

## **PROCEDURAL BACKGROUND**

On May 1, 2013, Steward filed a state court action ("the State Court Action") against BCBSRI, alleging state antitrust violations, as well as tortious interference with contract and tortious interference with prospective business advantage. The State Court Action did not allege any federal antitrust claims. Steward requested a conference with Presiding Justice Gibney, asking that the State Court Action be assigned to a single justice of the Superior Court. Counsel to BCBSRI appeared at the conference with Presiding Justice Gibney and, thereafter, the case was assigned to Associate Justice Silverstein on the business calendar. Steward also filed a motion to admit certain attorneys from Burns & Levinson's Boston office and from Williams & Connolly, respectively, *pro hac vice* in the State Court Action. BCBSRI consented to the *pro hac vice* motions and they were granted by Associate Justice Matos. After the assignment to Justice Silverstein, and after Justice Silverstein had requested the parties to schedule a

3

conference with him to discuss planning for litigation, Steward dismissed the State Court Action without prejudice and on the same day filed the instant action in this Court.

## FACTUAL BACKGROUND

Since 2008, Landmark has been operated by a Special Master appointed by the Providence County Superior Court due to Landmark's troubled financial condition. Compl. ¶ 21. The Special Master sought to find a purchaser for Landmark. *Id.* Although initial efforts were unsuccessful, Steward eventually submitted a formal bid to acquire Landmark and Landmark's subsidiary, the Rehabilitation Hospital of Rhode Island ("RHRI"), in May 2011. *Id.* at ¶ 24. Steward alleges that it wanted to acquire Landmark to begin creating a network of community hospitals in Rhode Island. *Id.* at ¶¶ 26, 31, 33, 58. Steward alleges that this network of hospitals might then partner with certain unspecified health insurers. *Id.* at ¶ 59. According to Steward, this hospital network would give Steward increased "negotiating leverage" with health insurers, and would permit Steward to charge higher reimbursement rates. *Id.* at ¶ 58. Over BCBSRI's objection, the Court entered an Order authorizing the Special Master to execute a proposed APA, pursuant to which Steward would acquire Landmark and RHRI. *Id.* at ¶ 25. In March 2012, the APA was formally amended to add certain conditions precedent, including Steward entering into agreements with Thundermist and Southern New England Regional Cancer Center ("SNERCC"). *Id.* at ¶ 34. Importantly, a contract with BCBSRI was *not* a condition of the APA. Steward alleges "on information and belief" that BCBSRI discouraged Thundermist from dealing with Steward. *Id.* at ¶ 41.

After executing the APA, Steward approached BCBSRI to attempt to negotiate reimbursement rates for Landmark's hospital services. *Id.* at ¶¶ 27-28. Negotiations between Steward and BCBSRI continued through the spring and summer of 2012. *Id.* at ¶¶ 37-38.

Steward alleges that BCBSRI refused to accept Steward's proposal for reimbursement rates that were five percent less than BCBSRI's statewide average rate for all hospitals. *Id.* Steward alleges that the parties participated in court-ordered mediation, but were ultimately unable to reach an agreement on acceptable reimbursement rates at Landmark. *Id.* at ¶ 43.

The Complaint also alleges that BCBSRI engaged in lobbying efforts aimed at preventing the passage of an amendment to the Hospital Conversion Act ("HCA"). *Id.* at ¶ 32. The amendment had been proposed to eliminate a provision of the HCA that would have limited Steward's ability to convert multiple hospitals to for-profit status in a short period of time. *Id.* at ¶ 31. BCBSRI presented testimony before the Rhode Island House Corporation Committee that if the amendment were allowed, then any new multi-hospital network should not be allowed to negotiate collectively with commercial health insurers on behalf of its entire group of hospitals. *Id.* at ¶ 32. In addition, as negotiations between Steward and BCBSRI stalled, and with Landmark owing BCBSRI substantial sums of money, BCBSRI filed a formal application with the Rhode Island Department of Health to remove Landmark from its provider network. *Id.* at ¶ 36. After filing its formal application, BCBSRI informed its subscribers that Landmark and RHRI would be considered "out of network" once BCBSRI's contracts with both Landmark and RHRI expired. *Id.* at ¶ 39. On September 27, 2012, Steward announced that it was terminating its effort to acquire Landmark. *Id* at ¶ 43.

As these events were unfolding, Steward claims that BCBSRI learned that St. Anne's Hospital – a Massachusetts hospital owned by a Steward subsidiary – owed BCBSRI more than $10 million in past overpayments. *Id.* at ¶ 50. Despite St. Anne's debt to BCBSRI, BCBSRI did not cancel its contract with St. Anne's. *Id.* at ¶¶ 45, 50. Instead, BCBSRI simply did not renew its contract. *Id.* However, BCBSRI continued to provide coverage to its subscribers who

received treatment at St. Anne's through the "Blue Card Program." *Id.* at ¶ 46. The Blue Card Program provides BCBSRI subscribers with health insurance coverage while traveling or living outside of Rhode Island. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that advances "labels and conclusions," or tenders "naked assertion[s]" devoid of "further factual enhancement" will not suffice. *Twombly*, 550 U.S at 555, 557. In other words, plaintiffs must do more than allege "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. At the motion to dismiss stage, courts must accept the plaintiffs' well-pled factual allegations as true. *Hostar Marine Transport Systems, Inc. v. United States*, 592 F.3d 202, 207 (1st Cir. 2010). Courts are, however, "under no obligation to credit [] conclusory allegations, which simply parrot the elements of the statute." *United States v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 28 (1st Cir. 2009). As the Supreme Court stated in *Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678.

To survive in court, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged – but it has not shown – that that the pleader is entitled to relief." *Id.* at 679.  In determining whether the factual allegations cross the threshold from possible to plausible, the court should "draw on its judicial experience and common sense." *Id.*

## ARGUMENT

Steward's mere "labels and conclusions" cannot convert its failure to negotiate successfully with BCBSRI into an antitrust violation. *Twombly*, 550 U.S at 555, 557. ***First***, it is black letter antitrust law that even a monopolist has no duty to deal with other companies. ***Second***, Steward lacks antitrust standing.  The entire premise of Steward's complaint – that BCBSRI has denied Steward increased "negotiating leverage" with health insurers – is not cognizable injury under the antitrust laws.  In addition, Steward's alleged injury is remote and contingent on mere speculation and conjecture, and Steward is neither a customer nor competitor in the alleged relevant market. ***Third***, Steward has failed to allege plausible relevant markets, an essential element of Steward's antitrust claims. ***Fourth***, much of BCBSRI's alleged conduct is immune from antitrust liability under the *Noerr-Pennington* doctrine. ***Fifth***, in addition to the failure to plead required elements of its tortious interference claims, Steward has pled itself out of court by affirmatively pleading facts that preclude Steward from establishing the intent element of such claims.  These arguments are discussed below.

### I.    Steward's Antitrust Claims Fail Because the Antitrust Laws Do Not Prohibit BCBSRI from Unilaterally Determining Terms of Dealing with Steward

Simply possessing monopoly power does not violate the antitrust laws.  Indeed, "[t]he mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system." *Trinko,* 540 U.S. at 407; *see also Arroyo-Melecio v. Puerto Rican Am. Ins. Co.,* 398 F.3d 56, 69 (1st Cir. 2005) (finding that "a monopolist is entitled to exploit a monopoly in order to maximize its profits");

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 883 F.2d 1101, 1110 (1st Cir. 1989) ("Section 2 does not prohibit vigorous competition on the part of a monopoly.").  Instead, "the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Trinko*, 540 U.S. at 407.

Therefore, to state a claim for monopolization under Section 2 of the Sherman Act[1] or Section 6-36-5 of the Rhode Island Antitrust Act[2] (Counts I, III, V, and VII), Steward must plausibly allege both:  "(1) possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Diaz Aviation Corp. v. Airport Aviation Servs., Inc.*, 716 F.3d 256, 265 (1st Cir. 2013) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)).  Similarly, to state a claim for *attempted* monopolization under these statutes (Counts II, IV, VI, and VIII), Steward must plausibly allege: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Id.* Steward has failed to plausibly allege the conduct element of each of its antitrust claims, and therefore those claims should be dismissed.[3]

---

[1]    Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize … any part of the trade or commerce among the several states."  15 U.S.C. § 2.

[2]    Section 6-36-5 of the Rhode Island Antitrust Act prohibits the "establishment, maintenance, or use of a monopoly, or attempt to establish a monopoly, of trade or commerce by any person for the purpose of excluding competition or controlling, fixing, or maintaining prices."  R.I.G.L. § 6-36-5.

[3]    Steward's Rhode Island Antitrust Act claims should be dismissed for the same reasons as its Sherman Act claims because the Rhode Island Antitrust Act must "be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable . . ." R.I.G.L. § 6-36-2(b); *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island*, 239 F.Supp.2d 180, 186-87 (D.R.I. 2003) ("The provisions of the Rhode Island Antitrust Act mirror those of §§ 1-2 of the Sherman Act . . . and are construed in the same manner as the federal statutes."); *ERI Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1353 n.1 (R.I. 1997) (same).

It has been black letter law for almost a century that "the Sherman Act does not restrict the long recognized right of a [company] engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *Trinko,* 540 U.S. at 408 (citing *United States v. Colgate & Co.,* 250 U.S. 300, 307 (1919). Furthermore, even a monopolist is "free to charge whatever wholesale price it would like; antitrust law does not forbid lawfully obtained monopolies from charging monopoly prices." *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.,* 555 U.S. 438, 454 (2009). Such a monopolist "certainly has no duty to deal under terms and conditions that the rivals find commercially advantageous." *Id.* at 450.

The principle that even a monopolist may unilaterally determine whether to deal (and the terms of dealing) with other companies applies with equal force to the healthcare context. For example, in *Kartell*, plaintiffs claimed that the refusal of Blue Shield of Massachusetts ("BSM") to deal with doctors who did not comply with BSM's ban on "balance billing" violated the antitrust laws. 749 F.2d at 932. The Court held that a health insurer "'generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently.'" *Kartell,* 749 F.2d at 932 (quoting *Monsanto Co. v. Spray-Rite Svc. Corp.*, 465 U.S. 752, 760 (1984)). As a matter of law, a health insurer's "independent determination of the terms on which it will deal, of the customers to whom it will sell, and of the suppliers from whom it will purchase is a manifestation of the competitive process, not an effort to suppress or to destroy that process." *Id.*

Furthermore, the court held that BSM was free to unilaterally determine the rates at which it was willing to deal with those doctors because "[a] legitimate buyer is entitled to use its market power to keep prices down." *Id.* at 929 (finding that a court must not interfere with a buyer's "determination of price," even if the buyer "has monopoly power"). The Court reasoned that "even a monopolist is free to exploit whatever market power it may possess when that

9

exploitation takes the form of charging uncompetitive prices."  *Id.* at 927 ("Mere monopoly pricing is not a violation of the Sherman Act.") (quotation omitted); *see also Ocean State Physicians Health Plan, Inc.*, 883 F.2d at 1111 ("[A] health insurer's unilateral decisions about the prices it will pay providers do not violate the Sherman Act – unless the prices are 'predatory' or below incremental cost – even if the insurer is assumed to have monopoly power in the relevant market.").

Steward brings eight antitrust claims, but they each challenge the same supposedly anticompetitive conduct:  BCBSRI's alleged refusal to deal with certain hospitals (Landmark and St. Anne's) on the terms Steward would prefer.[4]  These allegations do not state an antitrust claim as a matter of law.  *Trinko*, 540 U.S. at 408; *Kartell*, 749 F.2d at 932.  BCBSRI could flat out refuse to deal with these hospitals and it would not violate the antitrust laws because BCBSRI has the "right to deal, or refuse to deal, with whomever it likes, as long as it does so independently.'"  *Kartell,* 749 F.2d at 932.  Furthermore, even if BCBSRI had market power as alleged, BCBSRI is free to "use its market power to keep prices down" by negotiating for low rates with Steward at Landmark, or at any other hospital.  *Id.* at 929.  Therefore, Steward's antitrust claims based on the failure to come to terms on reimbursement rates should be dismissed with prejudice.

---

[4]     Although Steward alleges monopolization and monopsonization claims separately, these claims challenge the same conduct and the legal analysis is the same.  *See, e.g., Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc*., 549 U.S. 312, 320-22 (2007) (finding that "a monopsony is to the buy side of the market what a monopoly is to the sell side," and that monopsony is simply the "mirror image" of monopoly) (citations omitted).

## II.    Steward Lacks Standing Under the Antitrust Laws

Section 4 of the Clayton act provides a private cause of action for violations of the antitrust laws.[5]  Despite the broad language of Section 4, the "Supreme Court's doctrine of antitrust standing has significantly narrowed the number of persons entitled to bring suit."  *RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 13 (1st Cir. 2001).  By limiting the availability of private antitrust actions to certain parties, federal courts "ensure that suits inapposite to the goals of the antitrust laws are not litigated and that persons operating in the market do not restrict procompetitive behavior because of a fear of antitrust liability."  *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10 (1st Cir. 1999).  Standing in an antitrust case is therefore "not simply a search for injury in fact; it involves an analysis of prudential considerations aimed at preserving the effective enforcement of the antitrust laws."  *RSA Media, Inc.*, 260 F.3d at 13.  Accordingly, courts utilize a six-factor test to determine whether a private plaintiff has standing to bring an antitrust action.  *Id.*  The relevant factors are:

> (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ('antitrust injury'); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.

*Id.* (quoting *Serpa*, 199 F.3d at 10); *see also Associated Gen. Contractors of Cal., Inc v. Cal. State Council of Carpenters.*, 459 U.S. 519, 537–45 (1983).  These factors focus on whether a plaintiff has suffered "antitrust injury," as well as on remoteness or the "causal nexus" of the plaintiff's alleged injury to the defendant's conduct.  *Serpa Corp. v. McWane, Inc.,* 14 F. Supp.

---

[5]      "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor … and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."  15 U.S.C. § 15.

2d 147, 160 (D. Mass. 1998) *affirmed* 199 F.3d 6 (1st Cir. 1999); *see also Novell, Inc. v. Microsoft Corp.,* 505 F.3d 302, 311 (4th Cir. 2007).  Plaintiffs must satisfy both inquiries in order to have standing under Section 4.  *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing under § 4."); *RSA Media, Inc.*, 260 F.3d at 14 ("Even when a causal link has been established between the alleged violation and the injury, the absence of 'antitrust injury' will generally defeat standing.").  Finally, Courts routinely deny standing to plaintiffs who are not customers or competitors of the defendant.  *Serpa*, 199 F.3d 6.  Each of these three issues is discussed separately below.

### A. Steward's Antitrust Claims Fail Because Loss of "Negotiating Leverage" Is Not A Cognizable Antitrust Injury

Every antitrust plaintiff must show that it has sustained antitrust injury.  *Sterling Merchandising, Inc. v. Nestle, S.A.*, 656 F.3d 112, 121 (1st Cir. 2011).  Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Id*. (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  Thus, plaintiffs must prove "not only that they were injured as a result of the defendant's actions and that those actions constituted an antitrust violation, but also that their injury is the type of injury the antitrust violation would cause to competition."  *Id.*

The Supreme Court analyzed the antitrust injury requirement in *Brunswick,* 429 U.S. 477. In that case, certain bowling alleys were acquired by a bowling equipment manufacturer before they could go bankrupt.  *Id*.  Plaintiffs, who operated competing bowling alleys, sued the equipment manufacturer under the antitrust laws, arguing that they would have realized higher profits if their competitors had instead been permitted to go bankrupt.  *Id*. at 481.  The Court held that plaintiffs had failed to show antitrust injury because plaintiffs were only complaining that,

by acquiring the failing bowling alleys, defendant had deprived plaintiffs of the "benefits of increased [market] concentration," and plaintiffs were seeking only "the profits they would have realized had competition been reduced." *Id*. at 488. Therefore, the Court held that plaintiffs lacked standing because the antitrust laws were "enacted for the protection of competition not competitors." *Id*. at 488.

In this case, Steward's alleged injury is strikingly similar to the injury alleged in *Brunswick*. Steward claims that BCBSRI's conduct prevented it from acquiring Landmark, and that acquiring Landmark would have given Steward "negotiating leverage" to seek higher reimbursement rates. Compl. ¶ 58. As in *Brunswick*, Steward seeks to "increase concentration" in the alleged hospital market so that it can increase the prices it can charge its health insurer customers like BCBSRI. Steward's claimed loss of the ability to increase its market power and thereby increase prices for BCBSRI and BCBSRI's customers is not antitrust injury as a matter of law. To hold otherwise would turn the antitrust laws on their head and allow Steward to use those laws to increase its market power and harm consumers. Steward has alleged only harm to itself and not harm to competition. Because Steward's claimed loss of the "benefits of increased [market] concentration" is not antitrust injury, Steward's antitrust claims should be dismissed. *Id*. at 488.

### B.  Steward's Antitrust Claims Fail Because Its Alleged Damages Are Remote and Based Entirely on Speculation and Contingencies

An antitrust plaintiff must show that its alleged damages were caused by the alleged antitrust violation. *RSA Media, Inc.*, 260 F.3d at 14. "[A]ntitrust laws have been interpreted to incorporate common law principles of causation." *Rhode Island Laborers' Health & Welfare Fund ex rel. Trustees v. Philip Morris, Inc.*, 99 F. Supp. 2d 174, 187 (D.R.I. 2000) (citing *Associated Gen. Contractors*, 459 U.S. at 533-34). Consequently, "[c]ontingencies, conjecture,

and speculation will not support a finding of proximate cause," and will, therefore, not support a finding of antitrust standing.  *See id.* (denying antitrust standing where plaintiff's "theory of its case is full of contingencies and necessarily invites unacceptable levels of speculation and conjecture"); *see also Liberty Lake Investments, Inc. v. Magnuson*, No. C-89-00823-RJM, 1992 WL 551558, at *6-8 (E.D. Wash. Mar. 10, 1992) (denying antitrust standing to plaintiff whose alleged harm was premised upon contingencies).

Steward lacks antitrust standing because its alleged damages are based entirely on speculation, a chain of contingencies and conjecture.  Steward alleges that BCBSRI frustrated its attempts to purchase Landmark by refusing to offer Steward reasonable reimbursement rates and by interfering with Steward's prospective contracts/business relations with Thundermist.  Compl. ¶¶ 41, 43.  Even taking these allegations as true, Steward's ability to purchase Landmark was subject to express contingencies in the APA: specifically, Steward was required to enter into a "definitive agreement to buy the remaining interest in the SNERCC."  *Compl*. ¶ 34.  Nowhere in the Complaint does Steward allege that this contingency had been met, would be met in the future, or somehow was waived.

Furthermore, Steward's claims of alleged injury (loss of the opportunity to form a hospital network in Rhode Island and the opportunity to one day partner with insurers to offer health insurance in Rhode Island) rests upon a far-reaching chain of contingencies, hypotheticals and assumptions.  There are no allegations that Steward currently operates *any* other hospitals in Rhode Island.  Before Steward could form a hospital network in Rhode Island or offer health insurance –  just to name some of the most glaring assumed contingencies – it would need to: (a) negotiate with numerous other parties to acquire other hospitals (which it has so far failed to do in Rhode Island), including obtaining regulatory approvals for those acquisitions;

14

(b) successfully negotiate with health insurers regarding network participation (which it failed to do with BCBSRI); (c) create its proposed health insurance product, including obtaining necessary licensing and regulatory approvals; and (d) market and sell its hospital network and health insurance product to potential consumers.  In the face of such innumerable future uncertainties, Steward has failed to allege, and indeed is incapable of alleging, that BCBSRI's conduct caused Steward any alleged harm.[6]  *See Rhode Island Laborers' Health & Welfare Fund ex rel. Trustees*, 99 F. Supp. 2d at 187; *Liberty Lake Investments, Inc.*, 1992 WL 551558, at *6-8. Steward's failure to allege facts establishing causation is fatal to its claim of antitrust standing, and its antitrust claims should therefore be dismissed.

### C.    Steward's Antitrust Claims Fail Because Steward is Neither a Competitor Nor Consumer in the Alleged Relevant Markets

Only competitors and consumers in the alleged relevant market are presumptive antitrust plaintiffs; all other parties are "presumptively disfavored."  *Serpa Corp.*, 199 F.3d at 11-12 (collecting cases); *see also SAS of Puerto Rico, Inc. v. Puerto Rico Telephone Co*., 48 F.3d 39, 45 (1st Cir. 1995) ("If competitors and consumers are favored plaintiffs in antitrust cases, the list of those presumptively disfavored is far longer.").  Courts only extend standing beyond competitors and consumers in the relevant market if there are no other potential plaintiffs "with the incentive to sue."  *Id*. (citing *Associated Gen. Contractors*, 459 U.S. at 542).  Consequently, antitrust claims brought by a party who is neither a consumer nor a competitor in the relevant

---

[6] Indeed, Steward's claim of harm rests upon myriad contingent and speculative future events that would not even satisfy the more liberal Article III standing requirements.  *See, e.g. In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 15 (1st Cir. 2008) (holding Article III standing lacking in antitrust case where plaintiffs' harm was "contingent on several events which may or may not happen."); *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 71-72 (finding case non-justiciable on standing and ripeness grounds where harm was dependent upon "a chain of contingencies . . . which may or may not happen"); *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995) (denying standing where threatened injury was contingent upon a series of eight events).

market should be dismissed.  *Id.* (affirming dismissal of antitrust claim where party was neither a consumer nor a competitor in the relevant market).

The alleged relevant markets in this case are the commercial health insurance and hospital services markets in Rhode Island.  Compl.¶¶ 52-53.  However, Steward is neither a competitor nor a consumer in the commercial health insurance or hospital services markets in Rhode Island.  Although Steward operates hospitals in Massachusetts, there are no allegations that Steward operates hospitals in Rhode Island or buys or sells commercial health insurance in Rhode Island.  Because Steward is neither a consumer nor a competitor in the relevant markets, it is a "presumptively disfavored" plaintiff, and any injury it may have sustained as a result of the alleged antitrust violation is simply too remote.  *Serpa Corp.*, 199 F.3d at 12.  Steward also cannot overcome this presumption because there are many other competitors or consumers in the alleged relevant markets who are better situated to pursue the claims, including, for example BCBSRI subscribers, other health insurers, or other hospitals (including Landmark).  Because Steward is neither a customer nor competitor in the alleged relevant markets, Steward lacks antitrust standing and its antitrust claims should be dismissed.

**III.** **Steward's Antitrust Claims Fail As A Matter of Law Because It Has Failed to Allege Plausible Relevant Markets**

Steward's antitrust claims also fail because it has failed to allege plausible relevant markets.  To state a monopolization or attempted monopolization under the Sherman Act or Rhode Island Antitrust Act, a plaintiff must allege that the defendant possessed, at minimum, a "dangerous probability of achieving monopoly power" in a properly-defined relevant market.  *See, e.g. Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993); *Ocean State,* 883 F.2d at 1110.  A relevant market includes both "(1) the product market and (2) the geographic area involved."  *Lee v. Life Ins. Co. of North Am.,* 829 F. Supp. 529, 539 (D.R.I. 1993) *affirmed* 23

F.3d 14 (1st Cir. 1994).  Failure to plausibly allege each of these components of a relevant market is grounds for dismissal.  *Id.* at 541.

A relevant product market "is composed of products that have reasonable interchangeability for the purposes for which they are produced – price, use and qualities considered."  *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 552 (1st Cir. 1974) (quoting *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 394 (1956)). A "relevant geographic market consists of the 'the geographic area in which the defendant faces competition and to which consumers can practically turn for alternative sources of the product.'" *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 196 (1st Cir. 1996).  Steward has defined neither a plausible relevant product market nor a plausible geographic market and has therefore failed to allege properly its antitrust claims.

Steward alleges that the relevant product markets at issue in the case are (1) the market for the sale of commercial health insurance, and (2) the markets for the purchase of hospital services.  Compl. ¶ 52.  Steward's antitrust claims that are related to the alleged hospital services market (Counts III, IV, VII, and VIII) fail because that alleged product market excludes "reasonably interchangeable" substitutes from the perspective of sellers of hospital services. Steward alleges that both relevant product markets "exclude government programs, such as Medicare and Medicaid . . ."  *Id.*  However, payments by Medicare, Medicaid, and other health insurers are all reasonably interchangeable from the perspective of hospitals because hospitals sell their services to *both* government and commercial payors.  Steward cannot disregard government buyers in an effort to claim BCBSRI is a monopsonist in the hospital services market.  Because Steward expressly excludes government buyers, Steward's alleged relevant

market for the purchase of hospital services is facially implausible, and therefore the antitrust claims related to that market should be dismissed.  *Lee,* 829 F. Supp. at 539.

Similarly, Steward alleges that the relevant geographic market is the State of Rhode Island.  Compl. ¶ 53.  However, the Complaint concedes that this geographic market is incorrect. Steward affirmatively alleges that "Steward's Massachusetts Hospitals [] Serve Rhode Island Residents," and therefore concedes that patients can and do "practically turn" to hospitals outside of its alleged relevant geographic market.  Compl. ¶¶ 44-45; *Coastal Fuels*, 79 F.3d at 196.  The allegations related to Rhode Island residents using St. Anne's Hospital (which is located in Massachusetts) directly contradict, and demonstrate the implausibility of, the Complaint's allegation that the relevant geographic market is limited to Rhode Island.  Steward has failed to meet its burden to allege plausible relevant product and geographic markets, and its antitrust claims should therefore be dismissed as a matter of law.

## IV.   Certain Alleged BCBSRI Conduct is Immune from Antitrust Liability Under the *Noerr-Pennington* Doctrine

Although the core focus of Steward's Complaint is on BCBSRI's alleged refusal to deal with certain hospitals on the terms Steward would prefer, the Complaint also contains extraneous allegations related to BCBSRI's efforts to influence the legislature and the courts.  Even taking these allegations as true, such activity is immune from antitrust scrutiny under the *Noerr-Pennington* doctrine and should not be considered by the Court in evaluating the merits of Steward's antitrust claims.

Under the *Noerr-Pennington* doctrine, a party who petitions the government for redress is immune from antitrust liability, unless the petitioning is a sham.[7]  *See Professional Real Estate*

---

[7]     Petitioning activity is only a "sham" if it is "objectively baseless" and is intended to use the process itself as an "anticompetitive weapon."  *Professional Real Estate Investors,* 508 U.S. 49.  There are no such allegations here.

*Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 56-60 (1993) (discussing

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United*

*Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)).   The doctrine is rooted in the First

Amendment and in fears about the threat of liability chilling political speech.   *See Noerr*, 365

U.S. 127.   The immunity extends not only to petitioning the legislative and executive branches of

the government, but the judiciary as well.   *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404

U.S. 508, 510 (1972) ("the right to petition extends to all departments of the Government"); *see*

*also City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991).   Valid petitioning

activity therefore cannot be considered in assessing Steward's antitrust claims.   *See, e.g.*

*Professional Real Estate Investors*, 508 U.S. at 56-60; *Omni Outdoor Advertising*, 499 U.S. 365.

In this case, much of the alleged conduct in the Complaint involves BCBSRI's immune

petitioning activity.   Specifically, Steward alleges that (1) BCBSRI filed with the court a formal

objection to Steward's proposed acquisition of Landmark, Compl. ¶ 25; (2) BCBSRI "engaged in

an intensive lobbying campaign to prevent the passage of the amendment" to the Hospital

Conversion Act, *Id.* ¶ 32-33; and (3) BCBSRI filed a formal application with the Rhode Island

Department of Health to make material plan modifications to its insurance plan in order to

remove Landmark from its provider network, *Id.* ¶ 36, 39.   Each of these allegations contains

only petitioning activity by BCBSRI that is immune under the *Noerr-Pennington* doctrine, and

there is nothing in the Complaint to suggest that the activity was a sham.   Therefore none of

these allegations can be considered in evaluating Steward's antitrust claims.[8]

---

[8]      The Rhode Island Supreme Court "has adopted the *Noerr–Pennington* premise and has applied its protection to common-law tort claims." *Hometown Properties, Inc. v. Fleming*, 680 A.2d  56, 60 (R.I. 1996) (citing *Cove Road Development v. Western Cranston Indus. Park Assocs.*, 674 A.2d 1234, 1236 (R.I.1996)).   The doctrine thus applies to Steward's tortious interference claims as well.   As such, in the event the Court were to deny this Motion to Dismiss, BCBSRI requests that the Court strike the

## V.   Steward's Tortious Interference Claims Fail As a Matter of Law Because it Has Failed to Allege the Intent Element of the Tort

Steward's tortious interference claims fail because it has not alleged essential elements of the tort.  The elements of tortious interference with existing or prospective contractual relationships[9] are:

(1) the existence of a business relationship or expectancy,
(2) knowledge by the interferor of the relationship or expectancy,
(3) an intentional act of interference,
(4) proof that the interference caused the harm sustained, and
(5) damages to the plaintiff.

*Roy v. Woonsocket Inst. for Sav.*, 525 A.2d 915, 919 (R.I.1987).  The intentional interference element of the tort "require[s] a showing of an 'intentional and improper' act of interference." *Avila v. Newport Grand Jai Alai, LLC*, 935 A.2d 91, 98 (R.I. 2007).  In other words, in order to state a plausible claim, a plaintiff must allege "legal malice" or "intent to do harm *without justification*."  *Belliveau Bldg. Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000) (emphasis added).  It follows, therefore, that "there is no tortious interference with a business relationship when the means employed by the alleged interferor are legitimate" or justified.  *Textron Fin. Corp.*, 2011 WL 344134, at *5.  Where plaintiffs fail to allege the intent element of the tort, dismissal is appropriate.  *See, e.g., id.* at *6 (granting motion to dismiss where plaintiff's claim failed to plead lack of justification); *Barkan v. Dunkin' Donuts, Inc.*, 520 F. Supp. 2d 333 (D.R.I. Oct. 30, 2007); *see also Belliveau*, 763 A.2d at 627 ("Therefore, to establish a prima facie case of intentional interference with contract, aggrieved parties must allege and prove not only that the putative tortfeasors intended to do harm to the contract but that they did so without the benefit of

---

allegations of immune petitioning conduct from Steward's Complaint with respect to both the antitrust and tortious interference claims.

[9]    *Textron Fin. Corp. v. Ship and Sail, Inc.*, 2011 WL 344134, at *5 (D.R.I. Jan. 31, 2011) (citing *Mesolella v. City of Providence,* 508 A.2d 661, 670 (R.I.1986)) ("The tort may relate to both prospective business relationships and existing contractual relationships.").

any legally recognized privilege or other justification."); *Avilla v. Newport Grand Jai Alai LLC,* 935 A.2d 91 (R.I. 2007).

Rhode Island courts have adopted the Restatement (Second) of Torts ("Restatement") standard for determining whether conduct is "improper." *Textron Fin. Corp.*, 2011 WL 344134, at *5. The Restatement makes clear that there is no interference where a party acts in good faith to protect its interests by "intentionally caus[ing] a third person not to perform an existing contract . . . if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract." *Id.* at *5 (citing RESTATEMENT (SECOND) TORTS § 773).

Applying these standards, Counts IX and X of Steward's Complaint fail because Steward has not plausibly alleged that BCBSRI did anything "intentional and improper" to interfere with Steward's APA or its potential relationship with Thundermist. With respect to Steward's conditional APA to acquire Landmark, Steward has alleged only that BCBSRI: (1) filed an objection to the acquisition in court; (2) lobbied against proposed legislation related to the acquisition; (3) declined to accept Steward's proposed reimbursement rates; (4) informed its subscribers, truthfully, that its contracts with Landmark and RHRI would be expiring and that the facilities would thereafter no longer be in the BCBSRI network of participating providers; and (5) once Landmark's contract with BCBSRI expired, started paying its subscribers directly for services received at the then out-of-network facility. None of these actions is remotely "improper," and BCBSRI's alleged conduct relating to court proceedings and legislative lobbying are, as addressed above, immune under the Noerr-Pennington doctrine. *See Hometown Properties,* 680 A.2d at 60 (R.I. 1996) (*Noerr-Pennington* applies to common-law tort claims); *Cove Road Development,* 674 A.2d at 1236 (R.I. 1996) (same).

More importantly for purposes of this motion on the pleadings, Steward has failed to allege facts establishing that BCBSRI lacked justification for the supposed interference with its acquisition of Landmark.  To the contrary, Steward has affirmatively pled that BCBSRI's conduct was justified because Steward intended to acquire Landmark to increase its "negotiating leverage" against BCBSRI, and then charge higher reimbursement rates to BCBSRI and its customers.  Compl. ¶ 58.  Such higher rates would certainly "impair" BCBSRI's own interests under the Restatement standards.  Steward's own allegations thus provide a clear justification for BCBSRI's alleged interference – a justification that is also consistent with the goal of the antitrust statutes to ensure low prices for consumers.  *Kartell,* 749 F.2d at 931; *Ocean State*, 883 F. 2d at 1114 ("the antitrust law provides the best available barometer – indeed the only available barometer – of whether or not Blue Cross's conduct can be found to be 'wrongful' or 'illegitimate' – and, hence, tortious.").

In addition, as noted above in Section II B, Steward's ability to purchase Landmark was subject to express contingencies in the APA, including Stewart reaching an agreement to obtain the remaining interest in the SNERCC.  Compl. ¶ 34.  Steward does not allege that this contingency had been met, would be met in the future, or was waived.  The factual allegations of the Complaint thus fail to establish that, but for the claimed interference, Steward would have acquired Landmark.  *See APG, Inc. v. MCI Telecomm. Corp.*, 436 F.3d 294, 304 (1st Cir. 2006) (under Rhode Island law, plaintiff must show that it was at least "reasonably probable" that it would have completed a deal but for the interference of the defendant).  This failure to allege facts – as opposed to conclusory contentions – establishing causation further dooms Counts IX and X.

Count X, claiming unspecified interference with Steward's desired relationship with Thundermist, is likewise defective.  The vague allegation, made on information and belief, that "BCBSRI discouraged Thundermist from dealing with Steward," Compl. ¶ 41, is not a plausible allegation of any "intentional and improper" interference.  Nor does Steward allege any facts establishing a reasonable probability that, but for the alleged interference, it would have had any contractual relationship with Thundermist.  Indeed, Steward does not allege any actual dealings with Thundermist, claiming only that, in its application for government permission to acquire Landmark and RHRI, it identified "the establishment of a productive relationship with Thundermist" as a key component to the success of its plans.  Compl. ¶ 29.  The lack of any alleged facts establishing and defining the claimed expectancy, beyond Steward's stated desire for a "productive relationship" with Thundermist, preclude a showing of causation and damages. *APG*, 436 F. 3d at 304 (claimed expectancy has to be "reasonably definite" and "neither speculative nor remote"); *New England Multi-Unit Housing Laundry Ass'n v. Rhode Island Housing and Mortgage Fin. Corp.*, 893 F. Supp. 1180, 1193 (D.R.I. 1995) (dismissing claims on summary judgment where "[p]laintiffs' allegations of prospective injuries suffered as a result of [defendant's] alleged tortious interference are, putting it charitably, speculative.").

For all these reasons, Steward's tortious interference claims should be dismissed. *Textron*, 2011 WL 344134 at *6.

## CONCLUSION

For the foregoing reasons, BCBSRI requests that the Court dismiss Steward's Complaint with prejudice.

DEFENDANT, BLUE CROSS & BLUE SHIELD
OF RHODE ISLAND
By its attorneys,

/s/  Patricia K. Rocha
John A. Tarantino (#2586)
Patricia K. Rocha (#2793)
Joseph Avanzato (#4774)
Michael J. Tarantino (#8804)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI  02903
Tel:  (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
javanzato@apslaw.com
mtarantino@apslaw.com
Dated:  July 15, 2013

## Certificate of Service

I hereby certify that on July 15, 2013, I served a true copy of the within pleading *via electronic means (ECF)* on:

Robert C. Corrente, Esq.
Thomas Reith, Esq.
Burns & Levinson LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903
rcorrente@burnslev.com
treith@burnslev.com

Brendan V. Sullivan, Jr., Esq.
Steven R. Kuney, Esq.
Kevin Hardy, Esq.
Williams & Connolly LLP
725 12th Street, N.W.
Washington, DC 20005
bsullivan@wc.com
skuney@wc.com
khardy@wc.com

/s/  Patricia K. Rocha

651699.1

24