UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STEWARD HEALTH CARE SYSTEM LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS & BLUE SHIELD OF RHODE ISLAND,<br><br>Defendant. | Case No. 13-405S<br><br>Honorable William E. Smith<br>Magistrate Judge Lincoln Almond |

**PLAINTIFFS' MOTION TO COMPEL
THUNDERMIST HEALTH CENTER TO ACCOUNT FOR ITS FAILURE
TO PRODUCE, AND POSSIBLE DESTRUCTION OF, RESPONSIVE DOCUMENTS**

In response to two subpoenas, non-party Thundermist Health Center ("Thundermist") has produced documents in dribs and drabs, always accompanied by the assurance that its production is complete. With the last production, however, when it became apparent that a large quantity of responsive documents were still missing from its productions, Thundermist for the first time acknowledged that the files of scores of employees may have been destroyed. Production of documents by Thundermist's co-conspirators and an analysis of the documents that have been produced also has made clear that responsive documents that were in Thundermist's possession during 2009-2014 have not been produced. Because Thundermist has since gone mum about exactly whose files were destroyed and when, Steward brings this motion to compel an accounting of the missing files and documents, and to require a proper search and production of documents that were not destroyed but have still not been produced.

1

## BACKGROUND

The Amended Complaint alleges that Blue Cross & Blue Shield of Rhode Island ("Blue Cross") conspired with Thundermist Health Center ("Thundermist") and Lifespan in violation of Sections 1 and 2 of the Sherman Act and Rhode Island antitrust law. The better to understand Thundermist's actions, Plaintiff Steward has served two subpoenas on Thundermist—in October 2014 and January 2016.[1]

In response to the first subpoena, Thundermist produced a mere 78 documents, including only eight emails, and declared the production complete. When Steward remonstrated that so small a production could not possibly be complete, Thundermist produced another 1100 documents and again said that the production was complete. When Steward continued to identify gaps in the production, one month later Thundermist produced another 2400 documents and said for the third time that the production was complete.

In response to a subpoena from Blue Cross, and a second subpoena from Steward after the Amended Complaint was filed, Thundermist produced another 700 documents, but neither this production nor the former productions contained a large number of communications to and from Thundermist employees that are now known by Steward to exist (because Blue Cross or Lifespan produced communications with these Thundermist employees). It appears that Thundermist produced very few documents other than those communications that were sent or received by Charles "Chuck" Jones, Thundermist's CEO. When Steward inquired, counsel for Thundermist recently (in August 2016) said for the first time that the files of all the other employees may have been deleted. When pressed to say whose files may have been deleted,

---

[1] Steward Subpoenas to Thundermist (October 30, 2014) and (January 13, 2016), attached as Exhibits A & B, respectively

Thundermist counsel clammed up and refused to answer. Multiple emails to Thundermist counsel seeking information about which employees' files were preserved, searched, or deleted have not yielded any answers.

The matter cannot be allowed to rest there. Thundermist cannot be deemed to have complied with the two subpoenas until it has answered these obvious questions: (1) If documents were deleted or destroyed, for which employees did that happen, and when? (2) Is that deletion or destruction the reason why Thundermist has not produced communications to and from its employees that have been produced by others in the litigation, and is that why Thundermist has not produced any documents at all regarding certain topics for which it must have had documents at one time? and (3) Does the fact that Thundermist's CEO, one of the key players in the alleged conspiracy, carried out the document collection explain in part Thundermist's halting and incomplete production?

## THUNDERMIST'S INADEQUATE RESPONSE TO THE SUBPOENAS

### The First Subpoena

Two years ago, on or about October 30, 2014, Steward served its initial subpoena seeking the production of documents by Thundermist. *See* Exhibit A. Thundermist objected to every request, and in response to more than half of the requests, it objected and stated that it had no responsive documents.[2] Notwithstanding its objections, Thundermist produced sixty (60) documents (in addition to eighteen (18) documents relating to the Landmark acquisition that Steward itself had created and filed publicly). Of the 60 documents, only eight were emails. Thundermist said this production was complete.

---

[2] *See* Response of Non-Party Thundermist Health Center to Subpoena Duces Tecum Dated October 30, 2014 (December 18, 2014), attached as Exhibit C.

Steward "met" and conferred with Thundermist in February 2015.[3] Counsel for Thundermist explained that Thundermist's CEO, Mr. Jones, had handled the initial document production, reviewed all of the documents himself, and decided what should be produced.[4] Mr. Jones was adamant, counsel said, that the search was complete. Nevertheless, counsel agreed to inquire further. After doing so, Thundermist counsel wrote Steward and reported: "In the course of confirming that his prior search for responsive documents was exhaustive, Thundermist's CEO, Chuck Jones, learned that when Thundermist changed email servers some years ago, not

---

[3] Beginning at this time, Steward asked whether Thundermist was withholding documents based on its objections, and Steward requested (i) a list of the employees whose files Thundermist had searched and (ii) a list of the search terms used in collecting e-documents. *See* Email from Mark Levinstein to Robert Fine, Douglas Emanuel, and Don Wineberg (February 18, 2015), attached as Exhibit D.

[4] The major problems with Thundermist's production are exacerbated by the fact that Thundermist's CEO conducted the searches and productions. The case law has made it clear that this approach, leaving it to a custodian to search his documents, is problematic. *See, e.g., Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004)("[I]t is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched"); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 473 (S.D.N.Y. 2010) (Plaintiff's production was inadequate because counsel "place[d] total reliance on the employee to search and select what that employee believed to be responsive records without any supervision from Counsel"); *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 108 (S.D.N.Y. 2012) (leaving custodians to conduct effective searches is problematic because "designing legally sufficient electronic searches in the discovery or FOIA contexts is not part of their daily responsibilities); *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) ("Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness.")

all emails were migrated over to the new server (his prior understanding was that all emails were sent over). *So there will indeed be additional emails for Thundermist to produce.*"[5]

On February 25-26, 2015, Thundermist produced another 1100 documents (which contained some 1300 pages of emails) and said again that its production was complete.[6] Despite multiple requests from Steward to identify what documents were searched, Thundermist did not say which employee files, and what kind of documents other than emails and attachments (such as Word documents, Excel spreadsheets, etc.) had been searched, and admitted that only very limited search terms had been used.

On March 30, 2015, however, counsel for Thundermist produced more documents and again said that its production was complete ("As for the larger issues, … we believe all responsive documents have been produced" and "Mr. Jones' search of electronic documents extends to the entire Thundermist network").[7] Despite this assurance, counsel also advised that "we have asked Chuck Jones to re-review all locales to make certain the task is complete, particularly in response to your awareness of documents between Steward and Thundermist that have not been produced."[8] Counsel also said that Thundermist's former CEO, Maria Montanaro, may have "scrubbed her computer when she left and that may explain that situation."[9]
Sure enough, one week later, counsel told Steward that "Chuck Jones was able to search an archive that had not been previously searched. He has provided these documents to us, and they

---

[5] Email from Robert D. Fine to Mark Levinstein (February 17, 2015) (emphasis added), attached as Exhibit E.

[6] Letter from Robert D. Fine to Mark S. Levinstein (February 25, 2015), attached as Exhibit F.

[7] Id.

[8] Email from Robert D. Fine to Mark Levinstein (March 30, 2015), attached as Exhibit G.

[9] Id.

are substantial in number."[10] This production in two batches included another 2,400 documents. And this time Mr. Jones provided an affidavit which said, "My search of Thundermist's 'paper files' and electronic files includes all files – and all computers – available to be searched by Thundermist with any remote possibility of containing responsive documents."[11]

### The Second Subpoena

The documents that Thundermist produced in response to the first subpoena, taken together with the documents produced by Blue Cross and Lifespan, provided much of the foundation for the allegations in the Amended Complaint that Thundermist participated in a conspiracy to block Steward's entry into the relevant Rhode Island markets. And the documents made it clear that Mr. Jones was a central player in that course of conduct.

Following the filing of the Amended Complaint, Steward served new discovery requests on Blue Cross and Lifespan. In December 2015, Blue Cross served a subpoena on Thundermist that sought the production of documents relevant to the Amended Complaint, and, in January, Steward served its second subpoena on Thundermist seeking the same documents as Blue Cross sought (with the identical requests). In response, Thundermist produced an additional 692 documents.

Review of the documents produced *by Blue Cross and Lifespan* in response to Steward's new discovery requests made clear that Thundermist's production was deficient. That is, Blue Cross and Lifespan produced a substantial volume of communications with Thundermist that should have been produced by Thundermist as well, but which it did not produce. It was also clear that the vast majority of the Thundermist-produced documents are communications to or

---

[10] Email from Douglas J. Emanuel to Mark Levinstein (April 2, 2015), attached as Exhibit H.

[11] Affidavit of Chuck Jones Regarding Response of Non-Party Thundermist Health Center to Subpoena Duces Tecum Dated October 30, 2014 (April 16, 2015), attached as Exhibit I.

from Mr. Jones, whereas the documents produced by Blue Cross and Lifespan contain communications involving additional Thundermist personnel. (Contrary to the Court's order governing document production by non-parties, Thundermist produced all of its documents without metadata, so there is no identification of the "custodian" for each document. It is impossible, in other words, to tell which person identified as a "To" or "From" in the last email in the chain saved the document.)

When Steward raised these concerns, in a meet and confer call counsel for Thundermist said Mr. Jones may have been the only person who had retained his files *and that the files of all other employees may have been deleted (or not archived)*. This explanation was the first time that counsel allowed that the files of all employees had not been searched, as consistently represented to Steward up to that point—or, rather, could not have been searched because the files had been deleted.

Steward responded to this disclosure as follows: "Thundermist needs to go to look for the emails of all Thundermist employees so they can be searched as you represented Thundermist was doing. If any of those emails were destroyed, we also need you to tell us on what date(s) that destruction occurred for each of these individuals."[12] And Steward provided a list of the employees for which this search should be conducted.[13]

When counsel failed to answer, Steward asked again: "We need answers to the question of whether each of the listed individuals' emails, word documents, Excel documents, and powerpoints still exist and whether they were searched for responsive documents for

---

[12] Letter from Mark Levinstein to Robert D. Fine at 2 (August 12, 2016), attached as Exhibit J.

[13] Id.

production.").[14] In response, Thundermist counsel said only that "we believe the search was thorough, complete and in compliance with the subpoena."[15]

Twice more, Steward asked "what emails were retained, what emails were destroyed, and what custodians' files were searched . . . ?"[16] But Thundermist refused to say. Its counsel responded that they would "stand by our previous statements that all responsive documents have been produced" and suggested that Steward should depose Mr. Jones about the document production.[17] Thundermist proposed, in other words, that Steward use the limited time in one of its limited number of depositions allowed to ask about subpoena compliance rather than the merits of the case.

### What Is Known and Unknown

We know that Thundermist has not produced responsive documents that must have been in its files at one time. As noted above, others have produced communications to and from Thundermist that would also have been in the possession of Thundermist, but which it has not produced. In addition, documents to or from many Thundermist personnel have only been produced when those documents were sent to or from Chuck Jones. Beyond those communications, there are whole topics as to which documents are missing. One example concerns Blue Cross's decision in May of 2012 to terminate its contract with Landmark (i.e., its submission for "material modification"), such that an insured patient's visits to Landmark would be "out of network" and potentially unreimbursed. For several months afterward, there were

---

[14] Email from Mark Levinstein to Robert D. Fine (August 19, 2016), attached as Exhibit K.

[15] Email from Robert D. Fine to Mark Levinstein (August 25, 2016), attached as Exhibit L.

[16] Emails from Mark Levinstein to Robert Fine (August 25, 2016), attached as Exhibits M & N.

[17] Email from Robert D. Fine to Mark Levinstein (August 25, 2015), attached as Exhibit O.

issues about where Thundermist physicians would send their Blue Cross-insured patients who required hospital services. Steward's second subpoena asked for "[d]ocuments or communications discussing or analyzing the referral of your patients to a hospital or outpatient facility other than Landmark," but Thundermist has produced none—nor any documents that refer to the "material modification" submission, Blue Cross taking Landmark out-of-network, or where Thundermist patients with Blue Cross insurance would go for hospital services. Given the number of missteps in its past production, including its belated revelation about widespread deletion or destruction of files, any claim that such documents do not exist cannot at this juncture be entitled to any weight.

The problem is not that Thundermist made an initial production that it called "complete," but later supplemented. The problem is that Thundermist repeatedly represented that it had made a comprehensive search for responsive documents for production, but, when pressed, repeatedly located additional documents, then ultimately indicated that the files for scores of employees—possibly every employee other than Mr. Jones, the CEO—had been deleted. The deletion may have been before either subpoena was served. It may have been innocent. Or, the documents may still exist and an adequate search may not have been conducted. But we do not know. Steward is entitled to an answer that sets forth what files were deleted or destroyed, when they were deleted or destroyed, and what efforts have been made to recover those files. *See Home Instead, Inc. v. Florance*, No. 8:12-cv-264, 2013 WL 5979629, at *11 (D. Neb. Nov. 8, 2013) (ordering defendant to provide "a statement, signed under oath, which lists in detail all documents responsive to Plaintiff's discovery . . . which were not produced because the defendant destroyed, deleted, sold, shredded, or otherwise discarded them, and as to all such documents, provide a description of how and when [Defendant] lost control or possession of the

information"); *Lifestream Diagnostics, Inc. v. Polymer Tech. Sys.*, No. 00-cv-300-N-MHW, 2003 WL 25675504, at *1 n.1 (D. Idaho Jan. 14, 2003) (noting court's order to Lifestream to "submit further information regarding the Kingston documents, their location, and if such documents were destroyed, the identity of the person who destroyed them").

## Conclusion

For these reasons, the Court should grant the motion and require an accounting of the files and types of documents that have been destroyed and those that have in fact been searched, and a proper search of documents that still exist but have not been searched. The accounting will inform the Court whether further discovery and/or relief is justified.

Dated: September 23, 2016

/s/ Robert C. Corrente
Robert C. Corrente (RI Bar No. 2632)
WHELAN, CORRENTE, FLANDERS, KINDER
& SIKET LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel: (401) 270-4500
Fax: (401) 270-3760
rcorrente@wckslaw.com

/s/ Steven R. Kuney
Brendan V. Sullivan, Jr. (RI Bar No. 0789)
Steven R. Kuney (*pro hac vice*)
Mark S. Levinstein (*pro hac vice*)
Kevin Hardy (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
bsullivan@wc.com
skuney@wc.com
mlevinstein@wc.com

khardy@wc.com

*Attorneys for Steward Health Care System LLC; Blackstone Medical Center, Inc., f/k/a Steward Medical Holding Subsidiary Four, Inc.; and Blackstone Rehabilitation Hospital, Inc., f/k/a Steward Medical Holding Subsidiary Four Rehab, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2016, a copy of the foregoing document was filed through the Court's ECF system and that notice of that filing also will be sent to the below listed counsel via email:

John A. Tarantino
Patricia K. Rocha
Joseph Avanzato
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
javanzato@apslaw.com

N. Thomas Connally, III
Emily M. Yinger
HOGAN LOVELLS US LLP
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102
Tel: (703) 610-6100
Fax: (703) 610-6200
tom.connally@hoganlovells.com
emily.yinger@hoganlovells.com

Robert F. Leibenluft
Justin W. Bernick
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
robert.leibenluft@hoganlovells.com
justin.bernick@hoganlovells.com

**Via First Class Mail and Email To:**

Robert D. Fine
Chace, Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, Rhode Island  02903
Tel.:  (401) 453-6400
Fax  (401) 453-6411
fine@crfllP.com

/s/ James H. Weingarten