# EXHIBIT D

## McCauley, Eileen

**From:** Levinstein, Mark
**Sent:** Wednesday, February 18, 2015 5:20 PM
**To:** Robert D. Fine
**Cc:** Bell, Daniel; Hillson, Greg; Douglas J. Emanuel; Don E. Wineberg
**Subject:** RE: Steward Subpoena to Thundermist

Dear Bob,

Thank you for confirming that you'll be producing additional e-mails. We look forward to hearing from you the volume of e-mails that you expect to produce, as well as the terms Thundermist is using for this search. Please also let us know the names of the custodians whose files Thundermist is searching.

As a first matter, however, we need to be clear - the issue is far from just emails. There was nothing exhaustive about your client's search for documents and there are many categories of responsive documents other than emails that have not been produced.

While we appreciate your diligence in pursuing additional e-mails contained in your client's files, I'm sure you will appreciate our concern about the pace at which discovery from Thundermist has proceeded. Steward served its subpoena on Thundermist on October 31, 2014, nearly four months ago, and Thundermist has, to date, produced just 154 pages of documents that were not created by Steward. If Thundermist supplements its initial production with a substantial volume of additional documents, then perhaps there will be no need for a motion to compel. However, in light of the time that has already passed, Steward cannot run the risk of waiting for a supplemental production and reviewing that production, only to find that it too is deficient.

We are particularly concerned in light of your written objections:

*For more than half of Steward's document requests, Thundermist has said that it has no responsive documents. For some of these requests, it is inconceivable that Thundermist would have no responsive documents. And for some of these requests, Thundermist has produced at least a handful of responsive documents, and those few responsive documents strongly suggest that Thundermist has many more. For example, Thundermist wrote that it has no documents responsive to Request No. 4, which seeks "[a]ll documents that discuss any consideration of encouraging or recommending that Your physicians or other personnel refer patients to an acute care hospital other than Landmark or to health care providers who are based at or admit patients primarily at an acute care hospital other than Landmark." Documents responsive to this request plainly would include those pertaining to Thundermist's decision to send obstetrics patients to Women & Infants Hospital rather than Landmark (as well as documents pertaining to any other, similar actual or potential changes, such as in connection with a limited network with Blue Cross & Blue Shield of Rhode Island ("BCBSRI") and Lifespan or Care New England). Thundermist has produced some documents responsive to this request, and it is clear that there are many more.

As just one example, Request Nos. 6, 11, and 12 seek documents "sufficient to show" a certain fact or facts. Thundermist responded to these requests that "Thundermist, having not generated any responsive documents in the ordinary course of its business, has no responsive documents." It is, of course, impermissible to withhold responsive documents on the basis that they were not created "in the ordinary course of business." If, in the alternative, it is Thundermist's position that it simply has no responsive documents, regardless of how they were created, that position would be untenable. The whole idea of "documents sufficient to show" is that if a summary document exists, that is sufficient, but if no summary document exists, the underlying documents relevant to the issue that need to be reviewed to find the

1

information must be produced.  Even if Thundermist has no single document that would constitute a complete response to any of these requests, Thundermist no doubt has the underlying documents necessary to piece together a complete response.

Thundermist has objected to each of Steward's requests on the basis that BCBSRI did not interfere with the negotiations between Thundermist and Steward, rendering the requests overly broad and unduly burdensome.  Thundermist has also objected to several requests "to the extent th[e] request[s] seek[] documents concerning negotiations or contracts between Thundermist and any entity other than Landmark."  For reasons we have explained, it is Steward's position that these objections are meritless.  Setting that aside, however, in response to just one of Steward's requests, Request No. 1, has Thundermist identified particular responsive documents that it is withholding on the basis of its objections (or any other basis--e.g., privilege).  This suggests that Thundermist has not withheld, for any reason, any documents responsive to Steward's other twelve requests, but Thundermist has not responded to Steward's requests for clarification of this issue.  We need Thundermist to produce the documents you have identified, as no privilege or other basis for not producing them has been identified.

The concerns raised by Thundermist's written objections are compounded by Thundermist's initial production.  In addition to the extremely low volume of overall documents produced, some common categories of documents are nearly or entirely absent from the production.  In addition to the many responsive e-mails and letters that one would expect, one would also expect to see PowerPoint and other presentations, many additional meeting agendas and summaries, additional draft and final agreements, board minutes, and other types of documents.  The initial production also raises the issue of custodians.  Steward received no metadata, but it appears from the face of the documents that the only files searched were those of Chuck Jones.  However, it is clear from the documents produced that other Thundermist officers, employees, and board members would also have responsive documents in their custody.  As just one example, where are Maria Montanaro's files and emails?

We appreciate your diligence in pursuing additional discovery with your client.  In an effort to move the process along more efficiently, so we can see if there is now a real commitment for conducting a reasonable search and producing the many responsive documents, please provide us as soon as possible with the following information:

A statement as to whether, in addition to the documents identified in response to Request No. 1, Thundermist has identified responsive documents that it is withholding on the basis of its written objections, on the basis of privilege, or for any other reason.

A list of the custodians Thundermist is searching, as well as the places/systems Thundermist is searching.  It is apparent that a large quantity of responsive documents that are not emails have not been searched for or produced.

A list of the search terms to be used.

We need this information now so we can decide whether it is worth waiting or whether we should just file our motion to compel now.

We got some snow down in D.C., but I cannot imagine what it has been like dealing with the blizzard in Rhode Island.  Hope you're staying warm.

Mark S. Levinstein
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5012
202-434-5029 (fax)

2

mlevinstein@wc.com

-----Original Message-----
From: Robert D. Fine [mailto:RFine@crfllp.com]
Sent: Tuesday, February 17, 2015 4:37 PM
To: Levinstein, Mark
Cc: Bell, Daniel; Hillson, Greg; Douglas J. Emanuel; Don E. Wineberg
Subject: RE: Steward Subpoena to Thundermist

Mark:

In the course of confirming that his prior search for responsive documents was exhaustive, Thundermist's CEO, Chuck Jones, learned that when Thundermist changed email servers some years ago, not all emails were migrated over to the new server (his prior understanding was that all emails were sent over). So there will indeed be additional emails for Thundermist to produce.

We are meeting with Chuck on Friday to (a) appreciate the expanded amount of emails that have been located; and (b) discuss with him the search terms that he used for his search.

We will update you as soon as we have additional information to provide.

Bob


-----Original Message-----
From: Levinstein, Mark [mailto:MLevinstein@wc.com]
Sent: Thursday, February 12, 2015 2:44 PM
To: Robert D. Fine
Cc: Bell, Daniel; Hillson, Greg; Douglas J. Emanuel; Don E. Wineberg
Subject: RE: Steward Subpoena to Thundermist

Bob -

We are wasting time. The subpoena was served at the end of October, so we are getting close to four months and your client has produced 154 pages plus 571 pages of documents created by the plaintiffs.

As we have discussed, the objections in your response to the subpoena are the problem. The solution is not for you to go back and look for a few more documents. The solution is for us to meet and confer and for you either to (a) continue to refuse to produce the documents we are seeking or (b) agree about where you are going to search, what search terms you are going to use, and what responsive documents will be produced when you find them. You are simply not meeting and conferring about your objections. We need to schedule a call and for each request, you need to tell us whether you stand on your objections or whether you will conduct a proper search and produce the responsive documents, and when you will produce the responsive documents. The alternative is for us to simply proceed with a motion to compel. We need an answer by early next week.

Mark S. Levinstein
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5012
202-434-5029 (fax)
mlevinstein@wc.com

3

-----Original Message-----
From: Levinstein, Mark
Sent: Sunday, February 08, 2015 10:47 PM
To: Robert D. Fine
Cc: Bell, Daniel; Hillson, Greg; Douglas J. Emanuel; Don E. Wineberg
Subject: RE: Steward Subpoena to Thundermist

Bob -

First, I apologize if my strident tone was in any was impolite.

However, yes, you are correct that there is no doubt in my mind that unless they have been destroyed, there is a very substantial quantity of responsive documents that have not been searched for or produced.  As for what you told us, you correctly identify what you said, but my recollection is and at the time my understanding was that you told us that as something your client told you as support for the idea that BCBSRI was not important to Thundermist and that the decision not to do a deal with Steward had nothing to do with BCBSRI.  In our view, that is, to be charitable, revisionist history that will be shown to be inconsistent with the documents to be produced by Thundermist.

Mark Levinstein


From: Robert D. Fine [RFine@crfllp.com]
Sent: Saturday, February 07, 2015 2:15 PM
To: Levinstein, Mark
Cc: Bell, Daniel; Hillson, Greg; Douglas J. Emanuel; Don E. Wineberg
Subject: RE: Steward Subpoena to Thundermist

Mark - Thank you for your email. Given its length, tone and your underlying premise that there must be troves of documents not being produced, I doubt that what I say will have much, if any, impact on your view. Despite that, we have asked our client to search its records again and will report to you.  Without wanting to delve into the weeds here, I must correct one sentence you wrote (putting all other points of disagreement aside for this email). In our conversation on Thursday, I told you that Blue Cross was responsible for less than 5 per cent of Thundermist's budget. I did not say Blue Cross was or was not a dominant presence in the Rhode Island market and yet you imply that I did comment on its market share; a small but indicative point.

We will be back to you after further client and internal review for discoverable documents.

Bob

-----Original Message-----
From: Levinstein, Mark [mailto:MLevinstein@wc.com]
Sent: Friday, February 06, 2015 6:02 PM
To: Robert D. Fine; Douglas J. Emanuel
Cc: Bell, Daniel; Hillson, Greg; Steward Team
Subject: RE: Steward Subpoena to Thundermist

Dear Bob and Doug,

Thank you for speaking with us yesterday.  During our call, we explained the reasons that we believe Thundermist's December 18, 2014 document production is inadequate and its objections

4

are without merit. We explained that, in our view, it appears that Thundermist has either (1) not conducted a reasonable search for documents responsive to Steward's requests, or (2) conducted a reasonable search but withheld almost all of the responsive documents from production, perhaps on the basis of the objections Thundermist served along with its December 18 production. The first alternative is much more likely in our view.

During yesterday's all, we asked that you send us a written description of what search Thundermist has conducted (i.e., what files with hard copy documents have been searched and, with respect to electronic documents, what shared files and files of what custodians have been searched, and what search terms have been used to conduct the searches), a description of what additional search, if any, Thundermist is willing to conduct, and a statement as to whether Thundermist is waiving or standing on each of its December 18 objections. You agreed to speak with your client about these issues and get back to us in writing. As you referenced during our call, it appears that your firm was involved in many issues involving Thundermist with respect to which there are responsive documents, so please include in your response what search has been done for responsive documents in your firm's Thundermist files, as those documents are within the scope of the subpoena and are in Thundermist's possession, custody, or control.

In an effort to help you explain to your client Steward's position concerning the inadequacy of Thundermist's production, we have gone through the production and carefully reviewed its contents. The production includes a total of just 725 pages. Of those, 571 pages are documents created by Steward (the Steward-Landmark APA, Steward's response to supplemental questions it had received from the Rhode Island Department of Health, Steward's Change in Effective Control Application, various exhibits and attachments to those documents, and a presentation from Steward regarding quality and safety). All that leaves is 154 pages, less than approximately sixty documents, which consist of the following:

*   Approximately three documents that concern the acquisition of Landmark by Caritas Christi (a 2009 letter from Thundermist to Judge Silverstein, a 2009 letter from Richard Charest to Landmark staff, and a draft press release by Thundermist concerning the acquisition of Landmark by Caritas Christi);

*   Approximately fifteen documents that concern the acquisition of Landmark by Steward (a 2011 letter from Bob Guyon to Chuck Jones, a summary of a 2011 meeting between Chuck Jones and representatives of Landmark, a summary of a 2011 report from Chuck Jones to the Thundermist board of directors, a set of minutes from that board meeting, an agenda for a 2011 meeting with Bob Guyon, notes from a 2012 meeting between Chuck Jones, Richard Charest, and Bob Guyon, two 2012 drafts of a memorandum of understanding that were exchanged by Steward and Thundermist, a 2012 letter from Chuck Jones to Steward and Landmark, notes discussing a 2012 hearing concerning Landmark, and a 2012 internal e-mail from Chuck Jones discussing the reasons the Steward-Landmark deal fell through);

*   Approximately ten documents that concern the business relationship between Thundermist and Landmark (a letter from Maria Montanarro to Jonathan Savage about health care in Woonsocket, a few 2009 and 2010 draft and final memoranda of understanding between Thundermist and Landmark, a 2011 referral agreement between Thundermist and Landmark, and one 2011 e-mail and one 2012 letter concerning operational issues of the Thundermist/Landmark relationship);

*   Approximately ten documents that concern the decision by Thundermist to begin sending obstetrics patients to Women & Infants Hospital rather than Landmark (some notes from 2011 analyzing the issue, a copy of the 2011 agreement between Thundermist and Women & Infants Hospital, and a few related documents);

*   Approximately ten documents that concern the business relationship between Thundermist and Lifespan (a handful of miscellaneous documents from 2008 and 2009 discussing

plans for Thundermist and Lifespan to collaborate, three 2012 e-mails discussing collaboration in northern Rhode Island between Thundermist and Lifespan, a summary of a 2012 meeting between Thundermist and Lifespan, one 2012 e-mail and one 2012 letter from Lifespan to the Governor of Rhode Island about a collaboration between Thundermist and Lifespan (and a few attachments), and a letter of intent concerning a collaboration between Thundermist and Lifespan); and

\*      Two 2013 e-mails from BCBSRI discussing the possibility of doing something "creative" with Thundermist and referring back to previous discussions (and there are no documents about those previous discussions in the production).

While these few documents are responsive to requests in the subpoena and we appreciate receiving them, in our view, Thundermist's production is entirely inadequate.  For most of Steward's requests, Thundermist has produced no or virtually no responsive documents.  And the few documents that Thundermist has produced strongly suggest that Thundermist has a very substantial quantity of additional responsive documents in its possession, custody, or control.  For example, in May 2012, Thundermist was concerned about protecting its relationship with BCBSRI, which Thundermist viewed as a business partner and (contrary to what you told us during our call yesterday) a dominant presence in the Rhode Island market, but the production does not include any correspondence with BCBSRI, any internal correspondence, or any emails at all about these issues.  To give just one more example, of which there are many, the production includes several documents showing a developing business relationship between Thundermist and Lifespan concerning the Woonsocket area.  The production does not include, however, the many emails, letters, and other documents one would expect to exist concerning this developing relationship.

I apologize for asserting incorrectly during our call yesterday that there are no emails in Thundermist's production.  According to our count, the entire production includes a total of eight emails-a number so low that we are fairly certain that Thundermist has not conducted any email search at all.  An alternative explanation could of course be that Thundermist is withholding a vast quantity of responsive documents, but as stated above, we believe that is less likely.

As we have discussed, documents in Thundermist's possession, custody, or control are relevant to a wide range of issues in this antitrust and common law tort case.  BCBSRI has already raised a defense that Steward's alleged injuries were caused not by BCBSRI's conduct, but instead by Steward's failure to satisfy certain conditions in the Steward-Landmark APA, one of which was the condition that Steward and Thundermist finalize an acceptable memorandum of understanding.  Thundermist has exclusive custody or control of documents and information that unquestionably would shed light on the circumstances under which Steward would have satisfied the Thundermist condition in the APA or would have waived that condition, had Steward been able to reach an agreement with BCBSRI for reasonable reimbursement rates.  Documents and information concerning Thundermist's business relationships and communications with BCBSRI, Lifespan, and others are relevant not only to the question of causation, but also to the questions of BCBSRI's market power and anticompetitive conduct.  Finally, documents and information concerning the relationship that would have existed between Thundermist and a Steward-owned Landmark is relevant to Steward's damages claims.  These issues are the basis for the document requests contained in Steward's subpoena, and Thundermist's December 18 production is inadequate to meet Steward's needs.

We look forward to your written response.  Thank you, please stay warm, and have a good weekend.

Mark S. Levinstein
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

202-434-5012
202-434-5029 (fax)
mlevinstein@wc.com

-----Original Message-----
From: Levinstein, Mark
Sent: Monday, January 26, 2015 5:12 PM
To: Robert D. Fine
Cc: Douglas J. Emanuel;;
Subject: RE: Steward Subpoena to Thundermist

Bob -

How about Thursday, February 5th at 3 p.m. Eastern Time?

Mark S. Levinstein
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5012
202-434-5029 (fax)
mlevinstein@wc.com


-----Original Message-----
From: Robert D. Fine [mailto:RFine@crfllp.com]
Sent: Monday, January 26, 2015 1:01 PM
To: Levinstein, Mark
Cc: Douglas J. Emanuel; Bell, Daniel
Subject: RE: Steward Subpoena to Thundermist

Mark - Wednesday Feb 4 early afternoon and ending no later than 4:30 or anytime Feb 5 would work for us. Let us know, please. Thanks.

Bob

-----Original Message-----
From: Levinstein, Mark [mailto:MLevinstein@wc.com]
Sent: Sunday, January 25, 2015 5:00 PM
To: Robert D. Fine
Cc: Douglas J. Emanuel; Bell, Daniel
Subject: RE: Steward Subpoena to Thundermist

Bob -

Tuesday, February 3rd does not work for us, but we will try to be flexible on any other day that week.

Mark Levinstein

From: Robert D. Fine [RFine@crfllp.com]
Sent: Thursday, January 22, 2015 9:27 AM
To: Levinstein, Mark
Cc: Douglas J. Emanuel
Subject: RE: Steward Subpoena to Thundermist

Mark - We will be meeting with Chuck Jones, CEO of Thundermist, next Thursday. Do you have suggested times for the week of February 2 for a call for your "meet and confer"?

Thanks.

Bob Fine

Robert D. Fine
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, Rhode Island   02903
Phone:  (401) 453-6400, Ext. 115
Fax:  (401) 453-6411
Website:  www.crfllp.com<http://www.crfllp.com/>


To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

NOTICE:

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply or by telephone (call us collect at (202) 434-5000) and immediately delete this message and all its attachments.