## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STEWARD HEALTH CARE SYSTEM, et al.

v.                                                                   Civil Action No. 2013-405-S

BLUE CROSS & BLUE SHIELD
OF RHODE ISLAND

### *MEMORANDUM OF THUNDERMIST HEALTH CENTER IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AND IN SUPPORT OF ITS OBJECTION TO PLAINTIFF'S MOTION TO COMPEL*

The Motion to Compel filed by plaintiffs Steward Healthcare System, *et al.* (hereinafter "Steward") continues Steward's misguided and heavy-handed pursuit of unavailable or non-existent documents from non-party Thundermist Health Center ("Thundermist"). Steward has stated that its receipt of certain documents from other sources, which documents Thundermist has not seen, permits it to state, in essence "because other parties produced them, Thundermist must have them and produce them." What Steward's argument ignores, however, is that Thundermist does not have the documents to produce. Thundermist has accounted to Steward by way of affidavit and delivered a list of each and every electronic search term Thundermist utilized in performing searches of its entire network, substantiating Thundermist's inability to produce documents it does not have and demonstrating that it has produced all of the responsive documents it does have.

Steward's to-date insatiable demand beyond all reasonable proportion to Thundermist's status as a non-party has been met by thorough electronic searching beyond that which is called for in the Subpoena itself and by a massive production of responsive documents. Despite these productions beyond the scope of the Subpoena, Steward continually demands information from Thundermist, and not just the documents requested.

Thundermist has heard enough from Steward and has let Steward know.

Steward continually looks past what it has issued – a Subpoena. A Subpoena is a mandate to produce documents. Thundermist has produced documents: thousands of responsive documents – all of the non-privileged responsive documents Thundermist has found. A Subpoena, however, is not a mandate to answer questions about the effects of Thundermist's computer migration, a requirement to account for what documents were lost, or a vehicle to get Thundermist to provide the non-documentary information which is the object of Steward's motion.

Steward's pursuit ignores the thousands of pages Thundermist has produced, the verified explanation of electronic searches Thundermist performed on its network, and the explanation that a computer migration that occurred long before the Subpoena was issued caused certain records to be lost. Steward ignores the repeated offer by Thundermist first made in January, 2016,[1] to have Steward depose Thundermist's President and CEO, Charles "Chuck" Jones, without prejudice to plaintiff's right to continue the deposition if further documents were to be found. A deposition is the appropriate forum for Steward to pose the substantive, technical and procedural questions it has for Thundermist.

In light of the foregoing, and upon the bases hereinafter set forth, the Court should exercise its discretion, pursuant to Rule 45(d)(1), to deny Steward's motion, grant Thundermist's cross-motion for a protective order and award Thundermist its attorneys' fees and costs in connection herewith.

---

[1] Thundermist's suggestion is consistent with this Court's decision in *Summer Infant Inc. v. Carole E. Bramson*, No. 2015-218S, Memorandum and Order (February 4, 2016) (denying request for an order directed to a party to search for and produce communications from a list of thirteen individuals the other party identified as custodians likely to have responsive documents, in favor of first requiring a deposition). *See Exhibit 1.*

*I. PREFACE*

Before discussion of the facts and law which fully support Thundermist's position, two examples of Steward's efforts to misguide the Court demonstrate Thundermist's need for a protective order and an award of attorneys' fees.

Steward misquotes correspondence from Thundermist's counsel in what seems to be a deliberate effort to make it appear that Thundermist concedes that documents have been withheld (which Thundermist definitely does not concede).[2] *Compare Steward's Motion to Compel,* at 5 ("we [Thundermist's counsel] asked Chuck Jones to re-review all locales to make certain the task is complete, particularly in response to your awareness of documents between Steward and Thundermist that have not been produced.") *with Steward's Motion to Compel,* at Exhibit G (the actual email itself) ("we have asked Chuck Jones to re-review all locales to make certain the task is complete, particularly in response to your ***apparent*** awareness of documents between Steward and Thundermist that have not been produced.")(emphasis added).

Steward's inclusion of the quote in the memorandum itself conveniently omits the word "apparent" which appears in the e-mail from Thundermist's counsel. Steward's omission materially changes the inferred meaning of the quote from one of cooperation to one in which Thundermist's counsel seemingly acknowledges a failure to produce documents Thundermist has in its possession. The "misquote" constitutes an integral part of Steward's argument to this Court. Steward makes this argument notwithstanding that Steward attached the actual email, with the language used, to the Court as an exhibit.

---

[2] Inasmuch as Steward's motion lists five lawyers as apparently having participated in its preparation and submission, it is unlikely that all five of them simply overlooked the significant omission.

Steward also accuses Thundermist and its counsel of making a "belated revelation about wide-spread deletion or destruction of files" *Steward's Memorandum,* at 9, "for the first time," *Steward's Memorandum,* at 2, in August, 2016.

This statement is equally misleading and just as easily discredited by Steward's own exhibits. In April, 2015, Thundermist presented Steward with Mr. Jones's affidavit ("Jones Affidavit"), evidencing Thundermist's efforts to search for documents. *See Steward's Memorandum,* Exhibit I. In his April, 2015, affidavit, Mr. Jones testified that "an unknown quantity of e-mails dated prior to the date of the E-Mail Conversion [February 4, 2013] are no longer available to Thundermist, either electronically or otherwise." *Jones Aff.,* ¶ 14.

On December 31, 2015, in its continuing effort to cooperate with Steward, Thundermist sent to Steward a supplemental list of 68 additional searches performed within Thundermist's entire Barracuda server e-mail system, without time limit and without restriction as to any Thundermist employee, along with the earlier list of prior search terms. *See Exhibit 2* (the lists of all search terms utilized by Thundermist). In addition to sending Steward the list of search terms, Thundermist reminded Steward that "as indicated in Mr. Jones's affidavit of April 16, 2015, the 'e-mail conversion' was incomplete and Thundermist does not know precisely what data, or series of data, were lost in the E-Mail Conversion Period." *See Exhibit 2*.

Steward's claim that Thundermist and its counsel have only recently "changed their story" is objectively and demonstrably inaccurate.

## II. THE FEDERAL RULES

Pursuant to Fed. R. Civ. P. 26(b)(1), "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit."

Rule 26(b)(2)(C) provides that "the Court must limit the . . . extent of discovery . . . if it determines that: (i) discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

Rule 45(d)(3) requires a Court to "modify a subpoena that: (iv) subjects a person to undue burden."

In addition, Rule 45(d)(1) states that "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorneys' fees – on a party or attorney who fails to comply."

## III. THE E-MAIL CONVERSION

In February, 2013, well prior to receiving Steward's first subpoena dated October 30, 2014, Thundermist implemented a new email archiving system (the "E-Mail Conversion").

It was not until Thundermist set out to respond to Steward's first subpoena in late 2014 that Thundermist learned that the E-Mail Conversion did not transfer all then-existing e-mails into a new integrated server. As Mr. Jones stated in his April, 2015, Affidavit, "an unknown

5

quantity of e-mails dated prior to the date of the E-Mail Conversion are no longer available to Thundermist, either electronically or otherwise." *Jones Aff.*, ¶ 14.

Thus, despite Steward's insistence to the contrary, there is an unknown quantity of documents that existed at Thundermist prior to February, 2013 that did not exist in April, 2015, and still do not exist today. The suggestion or implication that Thundermist destroyed documents to avoid production, or that it is withholding responsive documents, is wrong.

## IV. *THUNDERMIST'S RESPONSE TO STEWARD'S SUBPOENAS*

With the guidance of Thundermist's outside counsel, Mr. Jones[3] coordinated Thundermist's response to Steward's two subpoenas, together with the assistance of an in-house paralegal and Thundermist's information technology staff. By affidavit, Mr. Jones has testified that Thundermist has searched its entire e-mail system (and any attachments thereto) and all of Thundermist's physical files which could in any way be expected to contain responsive documents. By doing so, Thundermist produced tens of thousands of pages of documents to its counsel for review, and ultimately produced thousands of pages of responsive documents to Steward.

As to electronic searches, "Thundermist's search included all emails that were sent or received by each employee of Thundermist on or after the Email Conversion, as well as all of the pre-Email Conversion emails that are still available to Thundermist." *Jones Aff.,* ¶ 19.

Moreover, Mr. Jones's "search of Thundermist's 'paper files' and electronic files includes all files – and all computers – available to be searched by Thundermist with any remote possibility of containing responsive documents." *Jones Aff.,* ¶ 27.

---

[3] Mr. Jones was Thundermist's Chief Technology Officer before becoming its President and CEO.

In addition, Steward participated in the development of the search terms Thundermist utilized in its effort to discover responsive documents.[4]

Steward also complains that Thundermist's responses to the Subpoenas have been periodic. Such a serial production should not be surprising or considered unusual. As previously mentioned, Thundermist only discovered the less-than-complete nature of the E-Mail Conversion during its production. Thereafter, Steward insisted on subsequent search terms that may (or may not) have been consistent with actual terms of the Subpoena.[5] Moreover, Steward later added a second Subpoena, requesting additional documents not requested in Steward's first subpoena.

Steward also chastises Thundermist for producing "very few documents other than those communications that were sent or received by" Mr. Jones. *Steward Memorandum,* at 2. Given that Mr. Jones has been President and CEO of Thundermist since October 23, 2011, and was Interim CEO as of June 2011, it should not be a surprise that the lion's share of communications related to Steward, Landmark and Blue Cross involved him.

The fact that Thundermist produced documents not to or from Mr. Jones proves that Thundermist electronically searched the *entire* archived server of Thundermist utilizing the search terms developed among counsel for Steward and Thundermist, as Mr. Jones testified. The more-than-100 search terms and combinations listed in *Exhibit 2* involved subject matter and were not limited to Mr. Jones either as a sender or recipient.

---

[4] To describe Steward's input as "participation" is generous. Steward regularly provided its input with the spirit of "Here's what you have to do," regardless of whether the mandated searches bore resemblance to the documents requested in the Subpoena.

[5] For example, in March 2015, Steward demanded production of, and Thundermist produced, electronic calendar invitations to meetings, even though those types of documents are not requested in either Subpoena. *See Steward's Memorandum,* Exhibit G (which is correspondence from Thundermist's counsel to Steward's counsel) (Thundermist producing such invitations at Steward's request, even though "outlook invitations (even involving BCBSRI) are not responsive to any of the categories of documents requested by the subpoena….in hopes that at least one issue of contention can be eliminated.").

Steward's cause-and-effect argument ("If other parties produced them, Thundermist is hiding them") rests on a faulty premise. Thundermist cannot produce what it does not have and cannot create documents Steward thinks Thundermist has (or thinks it ought to have).

## V. ARGUMENT

Fed. R. Civ. P. 26(b)(1) and (b)(2)(c) require proportionality and preclude undue burden in responding to discovery, especially when the interests of a non-party are concerned:

> When it comes to assessing burden, courts are generally more solicitous of non-parties. As the First Circuit has explained, "parties to a lawsuit must accept [the invasiveness of discovery] as natural and concomitant of modern civil litigation," but "non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight."

*United Therapeutics Corp. v. Watson Laboratories, Inc.*, 2016 WL 5334653 (D. Mass., Sept. 22, 2016) (alteration in original) (*quoting Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

In *Ebert v. C.R. Bard, Inc.*, 2014 WL 1365889 (M.D. Pa., April 7, 2014), the United States District Court granted a non-party's motion for a protective order (together with an award of attorneys' fees) as a result of the undue burden placed on the non-party after "consider[ing] issues such as relevance, the requesting party's need for the documents, the breadth of the request, the time period covered, the particularity with which the documents are described, and the ***burden imposed*** in responding." *Id*. at *2 (emphasis added).

The burden on Thundermist in ordering further searches and compelling the identification of documents lost more than a year prior to the first Subpoena and no longer available to Thundermist (as Steward requests) is the quintessential undue burden on a non-party. This is especially so given (i) the volume of documents previously submitted; (ii) the all-encompassing

8

search terms utilized in retrieving the documents from Thundermist's centralized server; (iii) that Steward has already received what it claims to be responsive Thundermist documents from other parties or entities; and (iv) the available alternative to Steward of deposing Mr. Jones.

In stark contrast to the circumstances before the Court, Steward's cases uniformly deal with discovery disputes *between parties.* For example, *Home Instead, Inc. v. Florance*, 2013 WL 5979629 (D. Neb., November 8, 2013), cited by plaintiff, is more instructive for what Steward *excluded* from its analysis. In *Home Instead*, the defendant franchisees had an obligation at the end of a contract to return documents to Home Instead. The defendants admitted that documents responsive to a request had been sold, shredded, donated or discarded, "including materials Home Instead claims [defendant] was required to return after the parties' franchise agreement expired." *Id.* at *2. Home Instead moved to compel further discovery and sought an order compelling an affidavit explaining the situation and imposing other requirements on the defendants. Although the court granted the motion under those circumstances, "Typically the Court would not require such a response to discovery." *Id.*

Steward also erroneously relies on *In Re: Seroquel Products Liab. Litig.*, 244 F.R.D. 650 (M.D. Florida 2007), where the failing of the party responding to discovery was that it did not disclose the search terms utilized. Thundermist has done so.

All of the cases Steward cites in support of its motion involve discovery sought from parties, which naturally do not address the First Circuit's admonition to give special weight to non-party status in evaluating balance of competing needs when discovery is sought from *non-parties* (i.e. Thundermist).

## VI.  CONCLUSION

For the foregoing reasons, Steward's motion to compel should be denied.  Thundermist's motion for a protective order should be granted and it should be awarded its attorneys' fees and costs in having to oppose plaintiff's motion and to prosecute its own motion for a protective order.

        THUNDERMIST HEALTH CENTER

        By its attorneys,

        /s/ Robert D. Fine
        _____
        Robert D. Fine, Esq. (#2447)
        Chace Ruttenberg & Freedman, LLP
        One Park Row, Suite 300
        Providence, RI 02903
        (401) 453-6400, ext. 115
        rfine@crfllp.com

October 7, 2016