**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STEWARD HEALTH CARE SYSTEM LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, <br><br> Defendant. | Case No. 13-405S <br><br> Honorable William E. Smith <br> Magistrate Judge Lincoln Almond |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO COMPEL THUNDERMIST TO ACCOUNT FOR
ITS FAILURE TO PRODUCE, AND POSSIBLE DESTRUCTION
OF, RESPONSIVE DOCUMENTS AND IN OPPOSITION
TO THUNDERMIST'S MOTION FOR A PROTECTIVE ORDER**

Plaintiffs' Motion to Compel made the following claims:

1.      Thundermist has not produced all relevant documents *that were at some point in time in Thundermist's possession* and that are responsive to subpoenas that were served in October 2014 and January 2016.[1]    Thundermist does not dispute this basic fact, but argues that the reason for the non-production of these documents is the February 2013 destruction of "an unknown quantity of emails" that were moved to a new server (the "E-Mail Conversion").[2]

2.      Contrary to the Court's Order governing production of documents by non-parties, Thundermist failed to produce most metadata associated with documents it did produce and

---

[1]   Plaintiffs' Motion to Compel [Dkt. No. 138] ("Motion") at 6-7.

[2]   Memorandum of Thundermist Health Center in Support of Its Motion for a Protective Order and In Support of Its Objection to Plaintiff's Motion to Compel [Dkt. No. 139] ("Thundermist Memo") at 4.

1

refused to provide a list of Thundermist employees whose documents were searched.[3] Thundermist does not dispute this fact. Search and production appears to have been limited to emails and attachments.[4] But because Thundermist failed to produce metadata, it is difficult to be certain, and counsel for Thundermist has refused to answer, whether the search for responsive documents included the Word documents, Excel documents, and PowerPoint slides/presentations of all of Thundermist's personnel.[5] Mr. Jones' April 2015 affidavit—written before Plaintiffs' filed their Amended Complaint and before the 2016 subpoena was even served—says only that all documents were searched.[6]

3. Even though Thundermist had more than sixty employees, the vast majority of the Thundermist-produced documents are communications to or from a single employee, Mr. Jones, Thundermist's CEO, and no documents at all were produced from most Thundermist employees.[7] Thundermist does not dispute this fact.

4. Mr. Jones himself conducted the searches for, and the production of, responsive documents.[8] Thundermist does not dispute this either, other than to say that Mr. Jones received unspecified "assistance of an in-house paralegal and Thundermist's information technology staff."[9] It is problematic under the case law when a non-lawyer document custodian conducts the

---

[3] Motion at 7-8.

[4] *Id*. at 5, 7-8.

[5] *Id.* at 7-8.

[6] Thundermist Memo at 6.

[7] Motion at 7.

[8] *Id*. at 4 n.4.

[9] Thundermist Memo at 6.

document production.[10]  And it is particularly problematic here, because Mr. Jones is a central figure in the alleged conspiracy.  Thundermist does not respond to this problem.

     5.    *Counsel for Thundermist* suggested in August 2016 that the reason that the vast majority of documents were to or from Mr. Jones may have been because everyone else's files may have been destroyed or deleted.[11]  Thundermist does not dispute this fact, but claims that the suggestion was not new because Mr. Jones' April 2015 affidavit said that an unknown quantity of emails "are no longer available."[12]  There is a potential world of difference between the unavailability of documents and their destruction.

     6.    In February 2015, when it became clear that the production was incomplete, Thundermist said it had searched a new server, believing all old emails had been migrated to the new server, but had now located the old server and would be producing additional documents.[13]  When production from the old server remained deficient, Thundermist counsel went back to Mr. Jones and reported that he "was able to search an archive that had not been previously searched."[14]  Thundermist does not dispute this fact.

In response, Thundermist says:

     1.    Thundermist is a non-party.[15]

---

[10]  Motion at 4 n.4.

[11]  *Id*. at 2.

[12]  Thundermist Memo at 4.

[13]  Motion at 4-5.

[14]  *Id*. at 5-6.

[15]  Thundermist Memo at 8-9.

2. Thundermist ran some searches and produced a lot of documents.[16]

3. "Given that Mr. Jones has been President and CEO of Thundermist since October 23, 2011, and was Interim CEO as of June 2011, it should not be a surprise that the lion's share of communications related to Steward, Landmark and Blue Cross involved him."[17]

4. "Thundermist does not know precisely what data, or series of data, were lost in the E-Mail Conversion Period."[18]

5. Plaintiffs' remedy is to depose Mr. Jones, so he can say he does not know what data or series of data was lost.[19]

6. In the Motion to Compel, Plaintiffs left one word out of a statement quoted from an email.[20]

## ARGUMENT

Thundermist's response does not answer most of the relevant questions. First, it does not explain the incomplete production of documents that date from March 2013 to January 2016. None of those documents can have been affected by the February 2013 E-mail Conversion.

Second, Thundermist's response addresses only the production of emails and still does not answer the question of whether Word documents, Excel spreadsheets, PowerPoint slides/presentations and other categories of documents were reviewed and produced even if they were not attached to an email or in Mr. Jones' files.

---

[16] *Id*. at 2, 4.

[17] *Id*. at 7.

[18] *Id*. at 4.

[19] *Id*. at 2.

[20] *Id*. at 3.

Third, contrary to what Thundermist says now, Thundermist counsel said before that the documents that were not "migrated" or "converted" to the new system still existed in other archives and could be searched.[21] Thundermist's response does not explain what, if anything, Thundermist has done to recover documents that were not converted to the new email system in February 2013.

Fourth, there is no good reason to believe that almost all responsive emails were to or from Mr. Jones. The subpoenas were not limited to Thundermist's communications with Steward, Landmark, and Blue Cross; they also concern a conspiracy among Thundermist, Lifespan, and Blue Cross to interfere with the acquisition, renovation, and upgrade of Landmark Medical Center by Caritas Christi and Steward from 2010 to 2012 (or by Prime from 2012 to the present), so Lifespan could purchase Landmark in cooperation with Thundermist. Documents about how Thundermist and its more than sixty employees have conducted their business with respect to moving patients from Landmark to Lifespan and Care New England hospitals, conspiring to take control of Landmark in cooperation with Lifespan, and dealing with Prime's acquisition and the various Rhode Island hospitals, as well as communications between and among them about those subjects are all responsive to the subpoenas. There is no reason why the vast majority of the documents produced should be emails to or from a single employee, even if that employee was the CEO.

Thundermist counsel's speculation about why the production was limited to Mr. Jones' emails is not an answer. Plaintiffs have a right to know which employees' electronically-stored information and hard-copy documents were searched (emails, Word documents, Excel spreadsheets, PowerPoint slides/presentations), including whether their individual computers

---

[21] *See* Motion at 4-5.

were searched (Thundermist indicated that one departing employee "scrubbed her computer when she left"),[22] and why no responsive documents to or from those employees were produced.

Fifth, Thundermist is a non-party, but Thundermist is an alleged co-conspirator, discovery from Thundermist is central to this litigation, and Thundermist should be required to respond properly to the subpoenas.  Even a non-party is required to:  (a) search non-email documents, (b) conduct a proper search for responsive documents, (c) determine what custodians' documents have and have not been searched, (c) disclose what documents have been destroyed, (d) explain what efforts have been made to recover documents that were archived in another system and were not "migrated" to a new system, and (e) have counsel conduct a proper search for documents or independently assess the search and production conducted solely by the CEO, a participant in the alleged conspiracy, when deficiencies in the CEO's production have been identified.

Sixth, the omission of the word "apparent" from an email quotation was inadvertent.  We regret the error, but we do not believe that the omission undermines the point that responsive documents that were in Thundermist's possession have not been produced.  The question is whether they have not been produced because they were deleted or because the search and/or review was deficient.

Seventh, a deposition of Mr. Jones about his document search and review is not a remedy.  He will simply say that he does not know what documents were (or were not) deleted or destroyed.[23]  The deficiencies are clear.  Counsel for Thundermist should be required to do now

---

[22]  *Id*. at 5.

[23]  Should the Court adopt Thundermist's suggestion, Plaintiffs should be granted more time to depose Mr. Jones regarding these issues, in addition to the seven hours provided under Rule 36 to depose Mr. Jones on the merits.

what they should have done before, i.e., conduct their own review and report on what documents exist, what files were and were not searched, and whether Mr. Jones' search for and review of documents was proper.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Motion to Compel, the Motion to Compel should be granted and Thundermist's Motion for a Protective Order should be denied.

Dated:  October 17, 2016

/s/ Robert C. Corrente
Robert C. Corrente (RI Bar No. 2632)
WHELAN, CORRENTE, FLANDERS, KINDER & SIKET LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel: (401) 270-4500
Fax: (401) 270-3760
rcorrente@wckslaw.com


/s/ Steven R. Kuney
Brendan V. Sullivan, Jr. (RI Bar No. 0789)
Steven R. Kuney (*pro hac vice*)
Mark S. Levinstein (*pro hac vice*)
Kevin Hardy (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC  20005
Tel: (202) 434-5000
Fax: (202) 434-5029
bsullivan@wc.com
skuney@wc.com
mlevinstein@wc.com
khardy@wc.com

*Attorneys for Steward Health Care System LLC; Blackstone Medical Center, Inc., f/k/a Steward Medical Holding Subsidiary Four, Inc.; and Blackstone Rehabilitation Hospital, Inc., f/k/a*

7

*Steward Medical Holding Subsidiary Four Rehab, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 17, 2016, a copy of the foregoing document was filed through the Court's ECF system and that a copy of the foregoing document also will be sent to the below listed counsel:

Via Email:

John A. Tarantino
Patricia K. Rocha
Joseph Avanzato
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
javanzato@apslaw.com

N. Thomas Connally, III
Emily M. Yinger
HOGAN LOVELLS US LLP
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102
Tel: (703) 610-6100
Fax: (703) 610-6200
tom.connally@hoganlovells.com
emily.yinger@hoganlovells.com

Robert F. Leibenluft
Justin W. Bernick
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
robert.leibenluft@hoganlovells.com
justin.bernick@hoganlovells.com

<u>Via First Class Mail and Email</u>:

Robert D. Fine
Chace, Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903
fine@crfllP.com

                                                                                              <u>/s/ James H. Weingarten</u>